UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GERALDINE K. WEITLAUF,                    )
                                          )
         Plaintiff(s),                    )
                                          )
    vs.                                   )          Case No. 4:07CV00407 ERW
                                          )
PARKWAY SCHOOL DISTRICT,                  )
                                          )
         Defendant(s).                    )

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Parkway School District's Motion for

Summary Judgment [doc. #29], Defendant's Motion to Strike Plaintiff's Statement of Material

Facts [doc. #42], and Defendant's Motion to Strike Affidavits [doc. #44].

## I. BACKGROUND FACTS

Plaintiff Weitlauf was hired as a technology support specialist in May, 2000 by the

Defendant Parkway School District.  During the course of Plaintiff's employment, Nancy Davis

was the human resource manager for the Defendant.  At the time of her hire, Plaintiff reported to

Nancy Falch.  On September 10, 2001, the Defendant hired Mr. Steve VanMater as the director

of technology for the school district.  For the period from 2000-2004, Plaintiff received a series of

excellent performance reviews, with only a few noted areas where some improvement was

possible.  In December, 2004 Ms. Falch announced her retirement, and in January, 2005, Ms.

Sharon Hennessy replaced Ms. Falch as Plaintiff's immediate supervisor.  Mr. VanMater remained

the director of the technology department.

The first incident about which Plaintiff complains, occurred in November, 2002. Plaintiff had spoken to her direct supervisor, Ms. Falch, about a promotion to senior technology support specialist. This promotion was approved by Ms. Falch and Mr. VanMater, however, it was approved with only a four percent salary increase, rather than the eleven percent salary increase that Plaintiff alleges was required in order to place her at the minimum pay for that position. Plaintiff complained about this discrepancy, at which time Mr. VanMater stated that he was withdrawing his recommendation that Plaintiff receive the promotion, as he did not wish to present the Board of Education with too many requests at one time, and he had hopes of reorganizing the department in the near future.[1] Following Mr. VanMater's decision to withdraw his recommendation for Plaintiff's promotion, Plaintiff filed an internal grievance regarding this incident, however, no change resulted from this action.

The second incident, or string of incidents, complained of relate to the period after Ms. Hennessy became Plaintiff's supervisor until Plaintiff's termination. Approximately one month after Ms. Hennessy became Plaintiff's supervisor, on February 7, 2005, Ms. Hennessy met with Plaintiff to discuss Plaintiff's job performance. Ms. Hennessy had prepared a list of areas in which she felt Plaintiff needed to improve. Prior to this meeting, Ms. Hennessy had sent an e-mail to Mr. VanMater, as well as his direct supervisor Mr. Mark Stockwell, and to the human resources manager, Ms. Davis. In the e-mail, Ms. Hennessy articulated all of the items she intended to discuss with Plaintiff at the scheduled meeting. Plaintiff contends that during this one month period, Ms. Hennessy had little supervisory contact with her, and therefore could not have had a

---

[1] While the factual record is not entirely clear, it appears that any promotion with a salary increase greater than a certain percentage required approval by the Board of Education. Plaintiff's original four percent salary increase did not require Board approval, whereas an eleven percent increase would require approval.

valid basis for the criticisms discussed during the February 7, 2005 meeting. On May 13, 2005 Plaintiff had her annual performance review, at which time Plaintiff received a review in the low acceptable range, with a number of specific areas in which Ms. Hennessy noted that Plaintiff needed improvement. During her evaluation, Ms. Hennessy cited complaints by teachers and principals about Plaintiff's response to phone calls. Following the meeting, Plaintiff sent an e-mail to Ms. Hennessy asking for specific times when she had received complaints, as she did not believe that this was a fair assessment, and if there had been complaints she wished to correct the behavior. Ms. Hennessy responded by e-mail with a single complaint, that had since been resolved with no fault being placed on Plaintiff. Due to her low evaluation, Plaintiff was placed on a Performance Improvement Plan ("PIP"). Plaintiff again disputes that the reasons given for her placement on a PIP were accurate, and further disputes that any thirty or sixty day follow up meetings took place to discuss her performance.

During the time Plaintiff was placed on the PIP until her termination, there were a number of conflicts between Plaintiff and her immediate supervisor Ms. Hennessy and several meetings took place between Plaintiff, Ms. Hennessy, and Mr. VanMater, as well as employees from the human resources department, to discuss these conflicts. On June 22, 2005, Plaintiff sent an e-mail to Mr. VanMater requesting a meeting to discuss Plaintiff's concerns with Ms. Hennessy. A meeting took place on July 6, 2005 to discuss Plaintiff's concerns. In preparation for this meeting, Plaintiff compiled a list of notes, articulating all of the complaints that she had against Ms. Hennessy. After the meeting Plaintiff submitted a copy of those notes to the human resources department. Two subsequent meetings took place on July 8, 2005 and July 11, 2005, in which Mr. VanMater discussed the ongoing problems between Plaintiff and Ms. Hennessy.

Plaintiff complains that Ms. Hennessy was rude and demeaning in her conduct towards Plaintiff. The Defendant does not dispute this allegation, but rather cites deposition and affidavit testimony which actually supports Plaintiff's complaint in this regard, by emphasizing that Ms. Hennessy was rude and demeaning to all employees under her supervision. On July 21, 2005, Plaintiff sent a memo to Mr. VanMater stating her concerns about Ms. Hennessy's attitude towards her, advising Mr. VanMater that she would no longer speak directly to Ms. Hennessy. Immediately following his receipt of this memo, Mr. VanMater requested that Plaintiff come to his office, immediately. Plaintiff stated that she would prefer to have any discussions with an employee from human resources present. The meeting did not take place that day, since an individual from human resources could not be located. However, Mr. VanMater did send Plaintiff an e-mail stating that she could not refuse to speak to her supervisor, Ms. Hennessy, on work related matters. Ms. Hennessy, Mr. VanMater, and Plaintiff met again on July 22, 2005 in a continued effort to resolve any conflict; Ms. Mary Muckler, from human resources, was also present during this meeting, at Plaintiff's request. Ms. Muckler specifically asked Plaintiff to describe Ms. Hennessy's demeaning nature, and Plaintiff responded by pointing to critiques of her work that she believed were inaccurate. Another meeting took place on July 25, 2005, however no new allegations were made, nor was any progress made on resolving the situation between Plaintiff and Ms. Hennessy. On August 4, 2005, Mr. VanMater presented Plaintiff with a written response to all of her complaints, and after giving Plaintiff an opportunity to review the document, Plaintiff, Mr. VanMater, and Ms. Davis met to discuss a proposed remedy to the situation. During this meeting Ms. Davis asked Plaintiff if she was alleging disparate treatment on the basis of age or gender, and Plaintiff said that she was not making that claim. Ms. Davis said that Plaintiff also denied age or gender as the basis of her claim of discrimination in Ms. Davis'

deposition testimony. Following the August 4, 2005 meeting, Mr. VanMater reached the conclusion that Plaintiff was unwilling to work with Ms. Hennessy.

Following this long history of conflict, a final meeting took place on August 5, 2005, in which Plaintiff was informed that district officials were recommending to the Board of Education that Plaintiff be immediately terminated. During this meeting Plaintiff was given a letter articulating the reasons for her termination, which included her failure to improve in the areas articulated in the PIP, and her continuing conflict between herself and Ms. Hennessy. The Board of Education approved her termination on August 24, 2005.

## II. PROCEDURAL HISTORY

Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in January, 2006. The EEOC closed their investigation and issued a right to sue letter on December 4, 2006. Within ninety days of receipt of the right to sue letter, Plaintiff filed suit on March 2, 2007, alleging she was discriminated against on the basis of age and gender under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Equal Pay Act. On February 29, 2008, Defendant filed the pending motion for summary judgment, which is currently before the Court. Also pending before the Court is Defendant's Motion to Strike Plaintiff's Statement of Additional Facts [doc. #42] and Defendant's Motion to Strike Plaintiff's Affidavits submitted in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment [doc. #44]. All three pending motions are fully briefed, and the Court will address them at this time.

## III. MOTIONS TO STRIKE[2]

---

[2]The Court notes that Plaintiff is proceeding in this matter *pro se*, and therefore her pleadings as well as her briefs are to be liberally construed. The Court applies this same standard to the evidence submitted by Plaintiff, while acknowledging that Plaintiff is not excused from

Defendant has filed two motions to strike, the first aimed at Plaintiff's Statement of Additional facts [doc. #42], and the second aimed at three affidavits submitted in support of Plaintiff's opposition to Defendant's Motion for Summary Judgment [doc. #44]. The Court notes that while the later is appropriately the subject of a motion to strike, the former is not.

A motion to strike under Federal Rule 12(f) is only applicable to pleadings. Fed. R. Civ. P. 12(f). Specifically, that rule states: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Id. See also Aftergood v. Central Intelligence Agency*, 355 F. Supp 2d 557, 564 (D.D.C. 2005). Therefore, Defendant's Motion to Strike Plaintiff's statement of facts is denied, as inappropriately filed. The appropriate way to counter a statement of facts is with evidence and argument presented in support of the pending motion, not a motion to strike.

Defendant's second motion to strike is permissible under federal rule of civil procedure 56. The Eighth Circuit has held that where an affidavit does not meet the standards set in Fed. R. Civ. P. 56(e), it is subject to a motion to strike. *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972). Inadmissable evidence "may not be used to support or defeat a motion for summary judgment." *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005). The court may "consider only admissible evidence" and is prohibited from using "affidavits and depositions that were made without personal knowledge, consisted of hearsay, or purported to state legal conclusions as fact." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004).

Defendant seeks to strike all three affidavits submitted by Plaintiff in support of her statement of facts and in opposition to Defendant's motion for summary judgment. Defendant

compliance with the Federal Rules.

addresses Plaintiff's affidavit separately from the affidavits of Nancy Falch and Phyllis Appel. For the sake of consistency the Court will follow the same format.

### A. Affidavit of Plaintiff Geraldine Weitlauf

Defendant raises two objections to Plaintiff's affidavit. The first is that many of the statements are not based on personal knowledge, but rather state Plaintiff's feelings or beliefs. The second objection is that many of the statements contain hearsay. The Court will address each argument, in turn.

It is undisputed that the contents of an affidavit must be based upon the affiant's personal knowledge. *El Deeb v. University of Minnesota*, 60 F.3d 423, 428 (8th Cir. 1995). The Court further recognizes that an affiant's belief as to certain facts, when not based on personal knowledge, is not admissible as evidence. *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1367 (8th Cir. 1983) ("Under Rule 56(e), an affidavit filed in support of or opposition to a summary judgment motion must be based upon the personal knowledge of the affiant; information and belief is insufficient."). The Court recognizes that some of the statements included in Plaintiff's affidavit do contain beliefs that are not based on personal knowledge, often referring to why a certain action was taken. These statements are not admissible and the Court will not rely upon them in reaching its decision. However, the majority of Plaintiff's affidavit contains statements based on her personal knowledge, and therefore are admissible; a statement does not become inadmissible simply because the affiant uses the word feel or believe.

Defendant's second objection to Plaintiff's affidavit is that the statements contain hearsay. Under the federal rules, hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The rules further provide that "[h]earsay is not admissible except as

provided by these rules . . . ." Fed. R. Evid. 802. The federal rules then go on to list a number of exceptions to the hearsay rule, and statements that are not hearsay. *See* Fed. R. Evid. 801-804. The Court further notes that not all statements made by a person other than the declarant are hearsay, because they are not always offered for the truth of the matter asserted; if a statement is offered other than for the truth, then it is not hearsay, and is admissible.

Many of the statements to which Defendant objected were made by either Mr. VanMater or Ms. Davis, both employees of Defendant Parkway School District. Under Rule 801,

> [a] statement is not hearsay if— . . . the statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a conspirator of a party during the course and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2). In all relevant instances, Mr. VanMater and Ms. Davis were acting as Defendant's agents concerning a matter within the scope of their employment, and therefore their statements are admissible under Rule 801(d)(2)(D). The Court will consider these statements in its summary judgment ruling.

Lastly, the Court notes that Defendant briefly criticizes Plaintiff's affidavit for making legal arguments and conclusions. The Court recognizes that these statements are more appropriately included in a legal brief, however, they are of little importance to this Court's analysis, and therefore require little attention. The Court will consider the facts based on the evidence submitted, and legal arguments will be analyzed according to those facts.

### B. Affidavits of Nancy Falch and Phyllis Appel

The Court next looks at Defendant's motion to strike the affidavits of Ms. Falch and Phyllis Appel. Ms. Falch was Plaintiff's former supervisor, and Ms. Appel was a former co-

worker. Defendant's first argument is that many of the statements in the affidavits contain the witnesses mental state and personal opinions. While many of Ms. Falch's statements do contain opinions, Ms Falch is competent to testify as to her opinions on the situation regarding her department, and the discussions that she had with her supervisor, Mr. VanMater. Any statements included in Ms. Falch's affidavit which contain Ms. Falch's opinion on the work environment are admissible and will be considered by the Court.

Defendant's next argument, that Ms. Falch had no personal knowledge regarding many of the statements made in her affidavit, has some validity. Some of the statements made by Ms. Falch concern subjects, which Ms. Falch could not have had personal knowledge, e.g. Ms. Falch states that "Sharon had little knowledge of what all my job duties were. . . ." However, Ms. Falch was not in a position to know the scope of Ms. Hennassy's knowledge. The Court will therefore exclude any statements that concern topics about which Ms. Falch had no personal knowledge. This is a relatively small number of statements, and does not support the exclusion of Ms. Falch's affidavit in its entirety. Specifically, the Court notes that Ms. Falch's testimony regarding what Mr. VanMater or Ms. Hennessy said to her is admissible as admissions of a party opponent under Rule 801(d)(2)(D).

With regards to Ms. Appel, Defendant makes similar arguments as previously addressed. Without repeating the analysis above, the Court concludes that although some statements made in Ms. Appel's affidavit will be stricken for lack of personal knowledge regarding the subject matter, the majority of her statements are based upon her personal experiences and statements that were made to her by employees of the Defendant within the scope of their employment. Therefore, the Court will not exclude Ms. Appel's affidavit in its entirety, but will not consider those portions which contain inadmissible evidence.

The Court concludes that Defendant's motion to exclude the three affidavits submitted by Plaintiff in their entirety should be denied. While the Court recognizes that some of the contents of the affidavits are inadmissible, the majority are not. Furthermore, the Court notes that while such a motion is permitted under the Federal Rules of Civil Procedure and under Eighth Circuit precedent, arguments regarding admissibility can more easily be raised in the context of the summary judgment briefing. Furthermore, regardless of the filing of a motion, the Court is mandated by the Federal Rules to only consider admissible evidence.

## IV. MOTION FOR SUMMARY JUDGMENT

### A. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element

essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

### B. DISCUSSION

Plaintiff has raised a number of claims in her complaint, under three different federal laws, involving two distinct time periods. The Court will address all claims, in turn, and where the

analysis is duplicative, the Court will reference the appropriate section of this opinion to avoid repetition.

The first incident which Plaintiff challenges as unlawful is denial of Plaintiff's promotion to senior technology support specialist. It is undisputed that Plaintiff was approved for a promotion to senior technology support specialist in 2002, along with a four percent salary increase. Plaintiff complained that a four percent salary increase was not in accordance with the salary range for the position, which required an eleven percent salary increase. According to the testimony of both Plaintiff, and Mr. VanMater, upon hearing of the large salary increase required, Mr. VanMater determined that he did not wish to seek the Board of Education's approval for Plaintiff's promotion, and therefore rescinded the promotion.

Defendant's first challenge to Plaintiff's complaint based on the 2002 promotion is that the challenge is untimely. Plaintiff cites to both the Equal Pay Act, and Title VII as a basis for her claim of discrimination. Under the Equal Pay Act, which is part of the Fair Labor Standards Act ("FSLA"), a cause of action

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . .

29 U.S.C. § 255(a); *see also Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 579-580 (8th Cir. 2006). Plaintiff filed suit on March 2, 2007, just over four years after the allegedly unlawful conduct took place in December, 2002.[3] Assuming for the purposes of this motion that Plaintiff's claim is for a willful violation of the Equal Pay Act, Plaintiff's specific allegations based on Defendant's failure to give her a promotion and attendant pay increase in 2002 is time barred. *See*

---

[3]December 17, 2002 was the date that Mr. VanMater notified Plaintiff that he had changed his mind regarding Plaintiff's promotion.

29 U.S.C. § 255(a).[4]  However, the Court does not preclude the use of these facts as evidence of Plaintiff's claims of discrimination and harassment under Title VII.

Since Plaintiff's claims based on the 2002 incident are time barred, the Court next turns to Plaintiff's allegations based on her termination and the treatment she received leading up to her termination.[5]  The Court will first address Plaintiff's allegations that Defendant discriminated against her by paying other employees doing the same work more than she was being paid, in violation of the Equal Pay Act.  Secondly, the Court will address Plaintiff's discrimination claim under Title VII.

The FLSA provides that

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex . . . , except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).  "An Equal Pay Act plaintiff's prima facie case-that is, one that will avoid summary judgment-consists of sufficient evidence the employer paid different salaries to men and women for equal work performed under similar conditions."  *Tenkku v. Normandy Bank*, 348

---

[4]The Court notes that any claim for discrimination under Title VII, based on the rescinded 2002 promotion, is also time barred; Plaintiff failed to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct, assuming to Plaintiff's advantage that the 300 day time limit is applicable, and not the shorter 180 day limitation.  *See* 42 U.S.C. § 2000e-5(e)(1).  Plaintiff did not file her claim of discrimination with the EEOC until January, 2006.

[5]There is some confusion over whether Plaintiff's Equal Pay Act claim was based solely on Plaintiff's failure to receive a promotion in 2002, or whether it was also based on her allegations that male employees received higher wages than female employees for doing the same job.  In order to ensure that all of Plaintiff's claims are addressed, the Court will assume that Plaintiff alleges a claim under the Equal Pay Act for discrepancies in pay between herself and her male coworkers.

F.3d 737, 741 (8th Cir. 2003); *see also Horn v. University of Minnesota*, 362 F.3d 1042, 1045 (8th Cir. 2004). The Eighth Circuit has further held that "[a]t the summary stage of the proceedings, the employer's justification for the differences is irrelevant, unless it is strong enough to establish one of the statutory affirmative defenses as a matter of law." *Tenkku*, 348 F.3d at 741.

The key question in the case before the Court is whether Plaintiff is able to show that other employees were paid more for equal work. The Court concludes that Plaintiff can not establish this element of a prima facie case, and therefore summary judgment on this question is appropriate. Each of the male employees cited by Plaintiff, as being paid more than Plaintiff, were performing different jobs. During Plaintiff's deposition she was asked about each male employee that reportedly earned more money than she, or who received a raise when Plaintiff did not. Plaintiff held the position of technology support specialist; the male employees to whom she compares her salary, were all exempt employees, not hourly wage earners, and although they reported to Ms. Hennessy, they had the title of programmer or senior programmer. Christine Beatty, a female employee, who did have the same position as Plaintiff, was given a pay increase in conjunction with a promotion from technology support specialist to senior technology support specialist. Plaintiff has not presented evidence that any male employees, who were performing the same job duties as Plaintiff, were paid more than Plaintiff, and therefore has failed to present a prima facie case under the Equal Pay Act.

The Court will next address Plaintiff's claims of discrimination and harassment under Title VII and the Age Discrimination in Employment Act ("ADEA") resulting from the actions beginning in February, 2005 until Plaintiff's termination. Plaintiff alleges that she was subject to a hostile work environment through the actions of her supervisor, Ms. Hennessy, and that she was

terminated because of her gender and age. Plaintiff's complaint encompasses two distinct claims, one for harassment and one for wrongful termination, both under Title VII and the ADEA;[6] the Court will address each claim, in turn.

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of gender. 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . ."). The ADEA makes it unlawful for an employer to discriminate against an employee on the basis of age. 29 U.S.C. § 623(a)(1) ("It shall be unlawful for an employer-(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ."). When there is no direct evidence of discrimination, the *McDonnell Douglas* burden-shifting framework is used to determine whether a submissible case has been presented by the plaintiff. *Breeding v. Arthur J. Gallagher and Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999). The first step in the burden shifting approach requires Plaintiff to demonstrate a prima facie case of discrimination. *Id.* Once a prima facie case has been established, the burden then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* "If the employer articulates such a reason, the plaintiff must then demonstrate that the employer's stated reason is pretextual and that the real reason for the employer's adverse employment action was unlawful age or sex discrimination." *Id.* at 1157.

_____

[6]The same standards are applicable under both federal statutes, and therefore the Court will address the two claims simultaneously.

15

Under Title VII or the ADEA, in order to survive a motion for summary judgment on her claim of harassment or hostile work environment, Plaintiff must present evidence sufficient to support a prima facie case. A prime facie case of hostile work environment requires a showing that: 1) Plaintiff is a member of a protected group; 2) she was subject to unwelcome harassment; 3) the harassment was based on her protected status; and 4) the harassment affected a term, condition, or privilege of her employment. *Devin v. Schwan's Home Services, Inc.*, 491 F.3d 778, 785 (8th Cir. 2007). In evaluating Plaintiff's employment discrimination claim, the Court is aware of the often cited authority, "summary judgment should seldom[ly] be utilized in employment cases." *Stidham v. Minnesota Minning and Manufacturing, Inc.*, 399 F.3d 935, 937 (8th Cir. 2005); *see also Devin*, 491 F.3d at 785.

Plaintiff alleges that she was harassed by Ms. Hennessy. The Court will assume for purposes of this discussion that the first two requirements of a prima facie case are met; Plaintiff is a member of a protected class and she was subject to unwelcome harassment.[7] However, Plaintiff cannot satisfy the third requirement, that the harassment was because of her status as a protected class member. Throughout Plaintiff's deposition testimony she refers to what she believed was a systematic elimination of technology support positions, in order to provide additional programming positions. When asked whether she believed she had been targeted for termination, Plaintiff stated: "Part of it was because of Steve [VanMater], and part of it was because Nancy

---

[7]It is not clear from the evidence presented by Plaintiff that the actions of Ms. Hennessy rise to the level of actionable harassment, however, the Court need not decide this question as Plaintiff is unable to establish the third element of a prima facie case. *See Devin*, 491 F.3d at 788 ("The harassment must be both subjectively offensive to the employee and objectively offensive such that a reasonable person would consider it to be hostile or abusive. Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was so intimidating, offensive or hostile that it poisoned the work environment." (internal quotations omitted)).

Falch had been told by Steve that Sharon [Hennessy] wanted another programming position, and that he had told her the only way that she would get it is if a position was eliminated." Weitlauf Depo., p. 164, lines 21-25. When asked if she thought Ms. Hennessy's behavior towards her was because of her gender or age, Plaintiff said no. Weitlauf Depo., p. 184, lines 5-22. Plaintiff believed that it was an attempt by Ms. Hennessy and Mr. VanMater to eliminate those employees that they "wanted . . . gone." Weitlauf Depo., p. 184, line 18. Plaintiff also stated that "she [Ms. Hennessy] treated several people badly . . . ." Weitlauf Deposition, p. 177, line 16. Ms. Hennessy's uniform treatment of others in an equally harassing manner, further supports Defendant's position that Ms. Hennessy's actions were not based upon Plaintiff's status as a protected class member. In reviewing the evidence presented, the only basis asserted by Plaintiff for the discriminatory conduct, was because Defendant wanted to make available a position for a programmer. There is no evidence that she was treated badly because of her age or gender. Therefore, the Court concludes that Plaintiff has failed to state a prima facie case of discrimination on the basis of either gender or age, and therefore Defendant is entitled to summary judgment on this claim.[8]

---

[8]The Court recognizes Plaintiff's argument that the poor performance evaluations she received immediately following the replacement of her immediate supervisor with Ms. Hennessy raise questions about their validity. Plaintiff had received excellent performance evaluations until Ms. Hennessy became her supervisor, leading to the inference that the poor performance evaluations were inaccurate. However, there is no evidence that any of this conduct was because of Plaintiff's member of a protected class. An employer may terminate an employee for any reason, or for no reason at all, as long as the reason is not because of their membership in a protected class. *Skinner v. Maritz, Inc.*, 253 F.3d 337, 339 (8th Cir. 2001) (Under Missouri law, "[e]mloyers may discharge at-will employees without cause and without incurring liability for wrongful discharge unless the employee falls within a statutory provision that provides to the contrary."); *see also Walker v. AT&T Technologies*, 995 F.2d 846, 848 (8th Cir. 1993) ("[T]he basic principle is that an employer has the right to assign work to an employee, to change an employee's duties, to refuse to assign a particular job to an employee or even to discharge an employee for good reason, bad reason, or no reason at all absent intentional age discrimination."). Furthermore, different supervisors may have different expectations resulting in different

Plaintiff's cannot prevail on her allegation that she was terminated because of her age or gender. This claim requires little discussion as it is based on the same set of facts presented in support of Plaintiff's harassment claim, and the requirements for a prima facie case of discrimination are also the same. The Court concluded above that Plaintiff has failed to present evidence that her harassment was because of her age or gender, the same conclusion is reached with regards to her termination. At the conclusion of Plaintiff's performance improvement plan period, Plaintiff was terminated, reportedly for poor performance. Assuming that Plaintiff is correct that she was not performing poorly, but rather was targeted because of Mr. VanMater and Ms. Hennessy's plan to get rid of Plaintiff's position in order to hire additional programmers, this is not actionable, as it does not present evidence that her termination was because of her protected status.

Finally, the Court looks at Plaintiff's claim of retaliation. Both Title VII and the ADEA allow for a claim of retaliation, which is analyzed under the same *McDonnell Douglas* burden-shifting framework as Plaintiff's discrimination claims. *See Stewart v. Independant School Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007). A prima facie case of retaliation requires Plaintiff to produce evidence: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Stewart*, 481 F.3d at 1043 (quoting *Green v. Franklin national Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)). Plaintiff argues that she was retaliated against because she complained, first about the 2002 promotion and attendant salary, and secondly just before she was terminated. The first complaint, regarding Plaintiff's 2002 promotion, is time

---

evaluations.

barred, and therefore the Court will not address it in further detail. The Court will focus its analysis on Plaintiff's second claim, regarding the facts just before her termination.

The first question for the Court is whether Plaintiff engaged in statutorily protected conduct. Plaintiff filed both letters and grievances with human resources stating that she believed that Ms. Hennessy's conduct was harassing and discriminatory. When asked what she meant by these statements, in several meetings involving Ms. Hennessy, human resources, and Mr. VanMater, Plaintiff did not elaborate regrading what she meant by harassing and discriminatory, except to say that she felt the statements in her performance evaluations were not truthful. It is undisputed that Plaintiff never stated that she believed Ms. Hennessy or Mr. VanMater were discriminating or harassing Plaintiff because of her age or gender. Title VII prohibits retaliation against an employee who opposes an unlawful employment practice, or an employee who opposes employment actions that are not unlawful, "so long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Barker v. Missouri Department of Corrections*, 513 F.3d 831, 834 (8th Cir. 2008). By the Plaintiff's own testimony, this standard is not met. Plaintiff believed that she was being discriminated against, however, she testified in her deposition that she did not believe that it was because of her age or gender. Plaintiff's belief that Ms. Hennessy's conduct,[9] her attempt to get rid of Plaintiff so that an additional programming

_____

[9]Again, the Court assumes for purposes of this analysis that Ms. Hennessy's conduct constituted harassment, although the evidence is not conclusive on this point. Plaintiff was questioned in her deposition as to what conduct she found to be harassing, and Plaintiff's responses were often vague. However, it appears that Plaintiff felt that she was being targeted through her poor job evaluation, that she believes was unjustified, and additional job responsibilities, following the removal of Ms. Falch as Plaintiff's immediate supervisor, without any accompanying promotion or salary increase, as was received by Ms. Beatty. Additionally, Plaintiff complained that Ms. Hennessy made rude comments to her, but these comments were not limited to Plaintiff, but rather Ms. Hennessy treated many of her employees, both male and female, in this manner.

employee could be hired, was unlawful, was not reasonable.  Plaintiff's belief that certain employees were being targeted by management to retire, or targeted to be terminated is not a violation of the law, and is not reasonably seen as a violation of the law, without some belief that it was because of membership in a protected class.  Therefore, Plaintiff cannot satisfy the prima facie case for retaliation.

## V.  CONCLUSION

First, the Court concludes that Plaintiff's claim of discrimination under the Equal Pay Act, based on her rescinded promotion is time barred, and therefore cannot form the basis for relief. Secondly, The Court concludes that Plaintiff cannot show that she was discriminated against because of her age or gender.  The Court acknowledges that Plaintiff had received excellent performance reviews until her immediate supervisor was replaced by Ms. Hennessy, but cannot conclude that there is a material issue of fact as to whether her termination was because of her status as an older woman.  Plaintiff's own testimony was that Ms. Hennessy and Mr. VanMater wished to increase the number of programmers, and in order to do so, needed to eliminate a position.  This is also consistent with Mr. VanMater's comments in 2002 regarding Plaintiff's rescinded promotion, when Mr. VanMater stated that he was looking at reorganizing the department.  There is no evidence to support Plaintiff's claim that she was discriminated against because of her membership in a protected class.  Finally, the Court concludes that Plaintiff has failed to state a claim for retaliation since she did not complain of an unlawful employment practice, or a practice that she reasonably believed to be unlawful.  Therefore, Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #29] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Statement of Material Facts [doc. #42] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Affidavits [doc. #44] is **GRANTED in part** and **DENIED in part**.  The Court shall consider the affidavits submitted by Plaintiff in support of her brief in opposition to Defendant's Motion for Summary Judgment, in accordance with the terms of this order.

Dated this 20th Day of August, 2008.



E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE